IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHESTER'S INTERNATIONAL, LLC,<br>an Alabama Limited Liability Company,<br><br>Plaintiff<br><br>v.<br><br>J&B LIQUOR, INC. d/b/a Jonesville Market,<br>a Michigan Corporation<br><br>NASSAH, INC. d/b/a Jonesville Market,<br>a Michigan Corporation<br><br>and<br><br>ADNAN "EDDIE" HAIDOUS,<br>an Individual,<br><br>    Defendants | Docket No.:<br><br>Hon.: |

## COMPLAINT

Chester's International, LLC ("Chester's" or "Plaintiff"), by and through its undersigned counsel, brings this action against J&B Liquor, Inc d/b/a Jonesville Market ("JBI"), Nassah, Inc. d/b/a Jonesville Market ("Nassah"), and Adnan "Eddie" Haidous ("Haidous") (collectively, "Defendants") for breach of contract, trademark infringement and unfair competition arising under the Federal Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. §1051, et seq.

41687545.2

## NATURE OF THE ACTION

1. This is an action for trademark infringement and breach of contract. Plaintiff Chester's seeks, among other things, a preliminary and permanent injunction: (i) enjoining Defendants and those acting in concert with them from wrongful and unlawful use of federally registered trademarks; and (ii) enforcing the post-termination covenants not to use Plaintiff's trademarks in the parties' total program agreement.

## PARTIES

2. Plaintiff is an Alabama Limited Liability Company with its principal place of business at 2020 Cahaba Road, Birmingham Alabama 35223.

3. JBI is a Michigan Corporation with its principal place of business at 319 Reading Ave, Jonesville, MI 49250.

4. Nassah is a Michigan Corporation with its principal place of business at 319 Reading Ave, Jonesville, MI 49250.

5. Haidous is an individual, Resident Agent of Nassah, and, upon information and belief, Manager of Jonesville Market, located at 319 Reading Ave, Jonesville, MI 49250.

## JURISDICTION AND VENUE

6. Through this Complaint, Plaintiff asserts claims against Defendants that arise, *inter alia*, under the Lanham Act, as amended, 15 U.S.C. § 1051, et seq.

7. The Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 15 U.S.C. § 1121 and 28 U.S.C. § 1367.

8. The Court has personal jurisdiction over Defendants, as upon information and belief Defendants operate multiple businesses in Michigan, and serve customers in Michigan

through a business operating as "Jonesville Market," located at 319 Reading Ave, Jonesville, Michigan 49250, and elsewhere throughout the United States.

9. Venue is proper in the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims herein occurred in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(3), as Defendants conduct business in the Western District of Michigan, and are subject to personal jurisdiction in this judicial district.

## BACKGROUND FACTS

10. The roots of the Plaintiff's business date back to 1952, when W.O. Giles started frying donuts and later, chicken, with his patented fryers in Montgomery, Alabama.

11. In 1965, Plaintiff's iconic 'Chester the Chicken' came to life with his cowboy hat, bandana, and spurs. Some of Plaintiff's logos including 'Chester the Chicken' are shown below.



12. In 1974, Plaintiff's business became known as "Chester Fried."

13. Plaintiff began using the marks CHESTER FRIED (And Design) and CHESTER FRIED (collectively, the CHESTER FRIED® mark) in connection with restaurant services at least as early as March 1985. True and correct copies of U.S. Trademark Registration Nos. 1,884,056 and 2,773,644 for the marks CHESTER FRIED (And Design) and CHESTER FRIED, respectively, are attached hereto as Exhibit A.

14. In 2002, "Fried" was dropped from Plaintiff's brand name, and Plaintiff became known simply as "Chester's," but continued to use the "Chester Fried" mark in connection with the business.

15. Plaintiff began using the mark CHESTER'S® in connection with batters, marinades and restaurant services at least as early as August 9, 2004.  A true and correct copy of U.S. Trademark Registration No. 3,206,105 for the mark CHESTER'S® is attached hereto as <u>Exhibit B</u>.

16. In March of 2004, Plaintiff transitioned from a licensed concept to a growth-driven model.  Ted W. Giles, son of the founder W.O. Giles, and the second-generation CEO, is credited with growing the brand on three continents.

17. In 2017, Wynn Giles succeeded his father, Ted W. Giles, as CEO.  Under Wynn's leadership, Plaintiff has focused heavily on new product development, streamlining the supply chain, and creating a more robust support system for existing franchise partners.

18. Today, Plaintiff remains a family-owned business with an aggressive growth strategy and over 1,200 locations in the US and Canada.

### *Plaintiff's Marks*

19. To identify the source, origin and sponsorship of CHESTER'S® restaurants and the goods and services they offer, and to distinguish those restaurants, goods and services from those established, offered and sold by others, Plaintiff has extensively used certain trade names, service marks, trademarks, logos, emblems and indicia of origin, including but not limited to the name and mark CHESTER'S® (collectively "the Marks").  The Marks are shown in the table below:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| CHESTER FRIED (And Design) | 1884056 | March 14, 1995 |
| CHESTER FRIED | 2773644 | October 14, 2003 |
| CHESTER'S | 3206105 | February 6, 2007 |
| CHESTER'S (And Design) | 3011320 | November 1, 2005 |
| CHESTER'S (And Design) | 3050595 | January 24, 2006 |
| CHICKEN ON THE RUN | 6828171 | August 23, 2022 |
| CHESTER'S CHICKEN ON THE RUN (And Design) | 6828172 | August 23, 2022 |
| CHESTER'S CHICKEN ON THE RUN (And Design) | 6828173 | August 23, 2022 |
| FRIED WITH LOVE | 6847387 | September 13, 2022 |
| CHESTER'S (And Design) | 6901638 | November 15, 2022 |

20. The CHESTER'S® mark has been used in interstate commerce by Plaintiff for more than 15 years, and has never been subject to challenge by any party.

5

21. The CHESTER'S® mark is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

22. The CHESTER FRIED® mark has been used in interstate commerce by Plaintiff for more than 35 years, and has never been subject to challenge by any party.

23. The CHESTER FRIED® mark is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

24. All of the Marks are valid and subsisting, and are not currently being challenged by any party.

25. Plaintiff has expended substantial sums since 2004 in advertising and promoting the Marks (including the CHESTER'S® and CHESTER FRIED® marks and brand names) in connection with restaurant services, paper products, business services, batters and marinades, including but not limited to, significant expenditures devoted to research, advertising, and marketing.

26. As a result of the promotion, advertising and sales of Plaintiff's goods and services under the Marks for over 35 years (since 1985), and the maintenance of the highest quality standards relating thereto, consumers have come to associate the Marks exclusively with Plaintiff and its authorized licensees and franchisees.

27. Each of the Marks have been used continuous and exclusively by Plaintiff or its authorized licensees and/or franchisee since their respective dates of first use.

28. The Marks are all inherently distinctive.

29. The Marks have acquired distinctiveness through Plaintiff's use in connection with its goods and services for well over five (5) years continuously and exclusively.

30. Pursuant to written agreements, Plaintiff grants licenses to qualified persons to own and operate CHESTER'S® restaurants using the Marks, but only in such manner and at such locations as are expressly authorized therein.

31. The agreements also license to franchisees a distinct, uniform system for restaurant operation consisting of confidential information, such as recipes for menu products, knowledge and know-how, and technologies, and the right to use a unique business format and methods of operations relating to the establishment and operation of fried chicken restaurants. Attendant to and an integral part of this license is the afore-mentioned license to use the Marks.

32. Plaintiff and its franchisees and licensees use the Marks as the trade identity by which the goods and services offered by Plaintiff and its franchisees and licensees are distinguished from other restaurants and the goods and services provided by them.

33. Plaintiff and its authorized franchisees have extensively advertised and promoted CHESTER'S® restaurants and the goods and services they offer under the Marks throughout the United States through various media. As a result of such efforts and the considerable sums expended in connection therewith, the goods and services offered by Plaintiff and its franchisees and licensees under the Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including within the State of Michigan, and the neighboring states.

### *Defendants JBI, Nassah & Haidous*

34. Defendant Haidous entered into a "Chester Fried Total Program Application & Agreement" with Plaintiff on or about March 23, 2004 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as <u>Exhibit C</u>.

7

35. The Agreement set a grand opening date for a CHESTER'S® location at 319 Reading Ave, Jonesville, Michigan 49250 (the "Location") for April 29, 2004, and a termination date of December 31, 2011.

36. In the Agreement, Haidous represented that he was doing business as "Jonesville Market" and/or "Jonesville Market, Inc."

37. Upon information and belief, "Jonesville Market, Inc." was in 2004 (and is today) a pseudonym or assumed name for Defendant Nassah.

38. At the time of the Agreement, Plaintiff was using CHESTER FRIED® as its primary brand; the transition to CHESTER'S® as the primary brand for Plaintiff's business occurred later in 2004.

39. Haidous operated an authorized CHESTER'S® franchise location at the Location from 2004 through 2011. The Agreement terminated by its terms on December 31, 2011.

40. After termination of the Agreement, Defendants continued to use Plaintiff's trademarks in connection with the sale of fried chicken at the Location.

41. Plaintiff's legal counsel sent a letter to Defendant JBI on November 18, 2014, requesting that, as owner of the property at the Location, they cease the use of Plaintiff's trademarks.

42. Defendant JBI did not respond to the November 2014 letter, did not take down the signage using and displaying Plaintiff's trademarks.

43. Plaintiff then had a different legal counsel send a second letter to Defendant JBI on November 28, 2016. Again, Defendant JBI did not respond to the letter, and did not take down the signage using and displaying Plaintiff's trademarks.

44. Plaintiff made various other attempts between 2017-2021 to secure Defendants agreement to take down the signage, and cease use of Plaintiff's trademarks, at the Location.

45. On September 21, 2022, Plaintiff sent a third letter, requesting that Defendants "acknowledge receipt…within ten (10) calendar days…and remove all Chester's® and/or Chester Fried® branding, signage, and/or marks from the [Location] and destroy same within forty-five (45) calendar days...". A true and correct copy of that letter is attached hereto as <u>Exhibit D</u>.

46. Representatives of Plaintiff visited the Location on February 2, 2023 and took the following photographs showing Defendants overt and blatant use of Plaintiff's marks CHESTER'S® and CHESTER FRIED®, along with associated designs showing 'Chester the Chicken.'



41687545.2



47.     Defendants are using Plaintiff's marks in connection with the sale of identical goods and services as Plaintiff and its authorized licensees and franchisees, namely restaurant services, business services, paper products, batters and marinades.

48.     Because Defendants are using marks which are identical in sight, sound, meaning and commercial impression to Plaintiff's marks, and because these marks are used in connection with the same products and services, and because such products and services are sold in the same channels of trade, customers are likely to be confused into believing that Plaintiff is the source of Defendants products and services.

49.     Upon information and belief, Defendants have intentionally and deliberately used, and continue to use, marks that are identical to Plaintiff's CHESTER'S® and CHESTER FRIED® marks for the purpose of exploiting and trading upon the substantial goodwill and reputation of

10

Plaintiff, and to enable Defendants to confuse and mislead customers into believing that its goods and services emanate from, or otherwise are sponsored by, or affiliated with, Plaintiff.

### COUNT I - TRADEMARK INFRINGEMENT
(Under Section 32 Of The Lanham Act)
[*Against All Defendants*]

50. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff owns all right, title and interest in and to the CHESTER'S® and CHESTER FRIED® marks.

52. Defendants are improperly and willfully infringing upon the CHESTER'S® and CHESTER FRIED® marks in interstate commerce through the advertising, promotion and sale of its goods.

53. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the registered marks CHESTER'S® and CHESTER FRIED®, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the marks CHESTER'S® and CHESTER FRIED®, or any marks or designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1)(a) (Section 32 of the Lanham Act).

54. Defendants' acts of trademark infringement have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

55. Defendants' use of the marks the CHESTER'S® and CHESTER FRIED® marks in connection with offering and providing fried chicken products and restaurant services has caused and is likely to continue to cause confusion among consumers who believe, contrary to fact, that Defendants' goods and services are provided by, or emanate from, or are otherwise sponsored by or affiliated with, Plaintiff.

56. The consumer confusion resulting from Defendants' use of the CHESTER'S® and CHESTER FRIED® marks results in a loss of goodwill, reputation, and sales to Plaintiff.

57. Additionally, Defendants are using counterfeit marks in connection with the sale, offering for sale, or distribution of goods or services, as the term "counterfeit" is described in Section 34(d) of the Lanham Act (15 U.S.C. § 1116(d)), thereby entitling Plaintiff to immediate and *ex parte* injunctive relief, and seizure of any and all goods of Defendants bearing such counterfeit marks.

58. As a direct and proximate result of Defendants' conduct, Plaintiff has been, and is likely to continue to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

59. Unless enjoined by this Court, Defendants will continue to infringe upon the CHESTER'S® and CHESTER FRIED® marks, thereby creating the likelihood of consumer confusion, deceiving the public, and causing Plaintiff immediate and irreparable injury, including loss of goodwill and loss of income, for which it has no adequate remedy at law.

## **COUNT II – UNFAIR COMPETITION**
(Under Section 43(a)(1)(A) Of The Lanham Act)
[*Against All Defendants*]

60. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 59 as if fully set forth herein.

61. The CHESTER'S® and CHESTER FRIED® marks operate as an indicator of source or origin, and have acquired distinctiveness via secondary meaning.

62. Defendants, through use of the CHESTER'S® and CHESTER FRIED® marks have, without authorization, in connection with its goods and services in commerce, made false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which have caused and are likely to continue to cause confusion, mistake,

or to deceive as to the affiliation, connection or association of Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of Defendants' goods and/or services, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

63. Consumers are likely to purchase Defendants' goods and services offered under the CHESTER'S® and CHESTER FRIED® marks believing that Defendants are affiliated, connected or associated with Plaintiff, resulting in a loss of goodwill to Plaintiff.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has been, and is likely to continue to be, substantially injured in its business including harm to its goodwill and reputation and loss of revenues and profits.

65. Unless enjoined by this Court, Defendants will continue to compete unfairly with Plaintiff, thereby deceiving the public, creating the likelihood of consumer confusion, and causing Plaintiff immediate and irreparable injury for which it has no adequate remedy at law.

## COUNT III – FALSE ADVERTISING
(Under Section 43(a)(1)(B) Of The Lanham Act)
[*Against All Defendants*]

66. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 65 as if fully set forth herein.

67. Defendants have used and use false and/or misleading descriptions and/or representations of fact in commercial advertising or promotion which misrepresent the nature characteristics and/or qualities of the its goods and services in violation of 15 U.S.C. § 1125(a)(1)(B) (Section 43(a)(1)(B) of the Lanham Act).

68. Specifically, Defendants have used Plaintiff's Marks (such as CHESTER'S® and CHESTER FRIED® marks) in promoting a competing fried chicken restaurant business, knowing that Plaintiff has no connection to this business.

13

69. Upon information and belief, Defendants' false and misleading statements actually deceive or have a tendency to deceive a substantial segment of customers.

70. Upon information and belief, Defendants' false and misleading statements are material, and are likely to influence the purchasing decision of actual and prospective customers.

71. Defendants actions stated herein have been committed willfully and in bad faith and with the intent to cause confusion, mislead and/or deceive.

72. As a direct and proximate result of Defendants' conduct, Plaintiff has been and is likely to be substantially injured in its business including harm to its goodwill and its reputation and loss of revenues and profits.

73. Plaintiff has no adequate remedy at law because the its Marks are unique and represents to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendants' false advertising misconduct.

74. Unless enjoined by this court, Defendants and those acting in concert with them will continue to use and infringe Plaintiff's Marks, to its irreparable injury.  This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Plaintiff's Marks, and to ameliorate and mitigate Plaintiff's injuries.

### COUNT IV – COMMON LAW UNFAIR COMPETITION
[*Against All Defendants*]

75. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 74 as if fully set forth herein.

76. Defendants' acts, practices, and conduct in using Plaintiff's Marks in interstate commerce constitute unfair competition and false designation of origin likely to deceive or mislead customers and potential customers.

77. Defendants' acts of unfair competition have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

78. As a direct and proximate result of Defendants' unfair competition, Plaintiff has been and is likely to be substantially injured in its business including harm to its goodwill and its reputation and loss of revenues and profits.

79. Plaintiff has no adequate remedy at law because the Plaintiff's Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendants' misconduct.

80. Unless enjoined by this Court, Defendants and those acting in concert with them will continue to use and infringe Plaintiff's Marks, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of Plaintiff's Marks, and to ameliorate and mitigate Plaintiff's injuries.

## COUNT V – BREACH OF CONTRACT
*[Against Defendants Haidous and Nassah]*

81. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 80 as if fully set forth herein.

82. The Agreement required Defendants Haidous and Nassah to abide by certain standards and guidelines with respect to the use of Plaintiff's trademarks.

83. The Agreement stated that "failure to adhere to the guidelines…shall result in relinquishment…of all rights to the benefits of the Chester Fried Total Program including use of the Chester Fried signage, Chester Fried name, etc., and any use of the Chester Fried logo."

84. The Agreement also stated that "[a]ll Chester Fried signage and graphics, including, but not limited to Chester Fried sign faces and skins, graphic panels, menu board logo disks, POP holder logo disks, etc., remain the property of Chester's International, LLC."

85. The Agreement also stated that "[i]n the event the customer ceases to be a Chester Fried Total Program customer, closes its location, or otherwise discontinues its business association with Chester's International, LLC, the customer agrees to return these [signage and graphics] items to Chester's International, LLC…".

86. Defendant ceased their business association with Plaintiff in 2011, but did not return the signage and graphics per the Agreement.

87. Defendant has breached the Agreement and the post-termination obligations thereunder by continuing to operate a competing business at the Location.

88. In operating the competing business, Defendants are using Plaintiff's Marks, the franchise system, and Plaintiff's confidential information, to offer goods and services substantially identical to those offered by legitimate CHESTER'S® franchisees and licensees.

89. Defendant has further breached the license agreement by continuing to use Plaintiff's Marks and failing to return manuals and other confidential information related to the system to Plaintiff.

90. Plaintiff is substantially and irreparably injured in its business, including but not limited to, injuries and losses in its customer base, future franchise sales, marks, and goodwill, by the Defendants' breach of the Agreement.

91. Plaintiff has not consented to Defendants' operation of a competing business, or Defendant's use of Plaintiff's Marks, system and confidential information in connection with operating the competing business.

92. Plaintiff has no adequate remedy at law in that its franchise system, the Marks, confidential information and goodwill are unique, and damages cannot fully or adequately compensate Plaintiff for the breaches of the Agreement identified above.

93. As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been, and is likely to continue to be, substantially injured in its business, including but not limited to its franchise system, reputation and goodwill.

94. Unless Defendant is enjoined and ordered to perform its post-termination obligations under the Agreement, Plaintiff is likely to be substantially and irreparably injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill, for which Plaintiff has no adequate remedy at law.

## COUNT VI – UNJUST ENRICHMENT
[*Against All Defendants*]

95. Plaintiff realleges and incorporates by reference the allegations in the foregoing Paragraphs 1 through 94 as if fully set forth herein.

96. Since at least January 2012, to the present day Defendants have operated and held themselves out to the public as a CHESTER'S® franchise, availing themselves of Plaintiff's Marks, the franchise system and Plaintiff's confidential information without compensating Plaintiff therefor.

97. Defendants have been, and continue to be, unjustly enriched, and there exists an obligation implied by law to do justice even though no express promise between Defendants and Plaintiff requires compensation for the aforementioned use of Plaintiff's Marks, the franchise system and Plaintiff's confidential information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Chester's International, LLC, requests the following relief against Defendants:

A. An Order preliminarily and permanently enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with it from:

    1. Using Plaintiff's Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Plaintiff's Marks;

    2. Otherwise infringing Plaintiff's Marks or using any similar designation, alone or in combination with any other components;

    3. Passing off any of their products or services as those of Plaintiff and/or its authorized franchisees and licensees;

    4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its businesses, products or services as being Plaintiff and/or its authorized franchisees and licensees;

    5. Causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Plaintiff and its authorized franchisees and/or licensees or any of Plaintiff's products or services; and

    6. Unfairly competing with Plaintiff or its franchisees and/or licensees in any manner.

B. An Order directing Defendants to immediately return to Plaintiff all operating manuals and other materials constituting confidential information provided to them in connection with the operation of the business at the Location, and all other materials bearing Plaintiff's Marks;

C.  An Order, pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Defendants, its affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation bearing Plaintiff's Marks, and all plates, molds, and other means of making the same, if any, be delivered to Plaintiff at Defendants' cost;

D.  An Order requiring Defendant to promptly eliminate their advertising under Plaintiff's Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, telephone books, telephone directory assistance listings and mass mailings, all at Defendants' cost;

E.  An Order, pursuant to 15 U.S.C. § 1116(a), requiring Defendants to file with the Court and to serve upon Plaintiff's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

F.  An Order requiring Defendant to account and pay over to Plaintiff all gains, profits and advantages derived by them as a result of their infringement of Plaintiff's Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

G.  An award to Plaintiff of such damages as it has sustained by reason of Defendants' trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for Plaintiff for three (3) times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

H. An award to Plaintiff of the amount of Defendants' unjust enrichment;

I. An award to Plaintiff of its costs and expenses, including reasonable attorney's fees; and

J.  Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby requests and demands trial by jury on all claims so triable.

Date:  June 7, 2023     /s/ *Sara E.D. Fazio*
Sara E.D. Fazio (P62046)
Kreis, Enderle, Hudgins & Borsos, PC
333 Bridge St NW #900
Grand Rapids, MI 49504
Telephone:  (616) 254-8418
Email:  sfazio@kehb.com

Darius C. Gambino – *pro hac vice to be submitted*
Saul Ewing LLP
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Telephone:  (215) 972-7173
Email:  darius.gambino@saul.com

*Attorneys for Chester's International, LLC*

41687545.2